**RECORD NO. 16-18**

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

THOMAS ALEXANDER PORTER,

*Petitioner - Appellant,*

v.

DAVID W. ZOOK,
Warden, Sussex I State Prison,

*Respondent - Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

**OPENING BRIEF OF PETITIONER
THOMAS ALEXANDER PORTER**

Robert E. Lee, Jr.
Dawn M. Davison
Virginia Capital Representation
Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
(434) 817-2970
roblee@vcrrc.org
ddavison@vcrrc.org

Trey R. Kelleter
Vandeventer Black LLP
101 West Main Street, Suite 500
500 World Trade Center
Norfolk, VA 23510
(757) 446-8697
tkelleter@vanblk.com

*Counsel for Petitioner-Appellant
Thomas Alexander Porter*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...........................................................i

**TABLES OF AUTHORITIES** ...................................................iv

**JURISDICTIONAL STATEMENT** ..........................................1

**STATEMENT OF ISSUES** .......................................................1

**STATEMENT OF THE CASE** ..................................................1

**STATEMENT OF THE FACTS** ................................................2

**SUMMARY OF ARGUMENT** .................................................3

**ARGUMENT** ...........................................................................4

**I.**  **Porter Was Convicted and Sentenced to Death by a Biased Jury** ..................................................................4

    **A.**  **The *McDonough* Claim** ............................................9

    **B.**  **The Actual Bias Claim** ...........................................13

        **1.**  **The state court did not adjudicate this claim** ..................15

        **2.**  **The state court did not exclude Sattler's affidavit because of a rule against jurors impeaching their own verdict** ...............................17

        **3.**  **The state court's decision to dismiss the related ineffective assistance of counsel claim was based on an unreasonable determination of the facts** ...............19

        **4.**  **Porter has never had the opportunity to prove the merits of this claim** ........................................21

i

II.    The State Court Violated Porter's Rights Under the Eighth and Fourteenth Amendments by Denying the Assistance of a Risk Assessment Expert ....................22

III.    Jurors Were Deprived of Evidence Necessary to Making Accurate Assessments of Porter's Culpability at the Guilt and Sentencing Phases ....................27

    A.    Counsel Failed to Reasonably Investigate Reaves's History of Unprofessional Conduct ..................27

    B.    Material Evidence Regarding Reaves's History of Unprofessional Conduct was Improperly Concealed in Violation of *Brady v. Maryland* and *Napue v. Illinois* ...........................34

    C.    Trial Counsel Unreasonably Failed to Call Powerful Exculpatory Testimony to Jurors' Attention ....................37

    D.    Counsel Failed to Reasonably Investigate Aggravating Evidence ....................40

    E.    Counsel Failed to Ensure Jurors Were Able to Give Effect to Favorable Evidence ....................46

IV.    Claims under *Martinez* ....................49

    A.    Counsel Unreasonably Failed to Object to Improper Curative Instructions and Comments During Closing ....................49

    B.    The District Court Improperly Denied Discovery on Porter's *De Novo* Claim that His Trial Counsel Failed to Investigate Reaves's Shooting ....................51

    C.    The Prosecution Violated *Brady* Regarding Valorie Arrington and Other Witnesses ....................55

**CONCLUSION** ..................................................................56

**REQUEST FOR ORAL ARGUMENT** ..................................57

**CERTIFICATE OF TYPE-VOLUME COMPLIANCE** ...................57

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Ake v. Oklahoma*, 470 U.S. 68 (1985) ......................................................26

*Albrecht v. Horn*, 485 F.3d 103 (3d Cir. 2007) .........................................15

*Banks v. Dretke*, 540 U.S. 668 (2004) ................................................36, 55

*Barnes v. Joyner*, 751 F.3d 2293 (4th Cir. 2014) .....................................22

*Billings v. Polk*, 441 F.3d 238 (4th Cir. 2006) ..........................................22

*Benge v. Johnson*, 474 F.3d 236 (6th Cir. 2007) .......................................16

*Brady v. Maryland*, 373 U.S. 83 (1964) ...................................................35

*Brumfield v. Cain*, 135 S. Ct. 2269 (2015) ...............................................20

*Buck v. Davis*, 2017 U.S. LEXIS 1429, 137 S. Ct. 759 (2017) ................26

*Burton v. Johnson*, 948 F.2d 1150 (10th Cir. 1991) .................................12

*Conaway v. Polk*, 453 F.3d 567 (4th Cir. 2006) ...............................*passim*

*Dennis v. United States*, 339 U.S. 162 (1950) .............................................8

*Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) .......................................12

*Fields v. Brown*, 503 F.3d 755 (9th Cir. 2007) .........................................13

*Fullwood v. Lee*, 290 F.3d 663 (4th Cir. 2002) .........................................36

*Gordon v Braxton*, 780 F.3d 196 (4th Cir. 2015) .....................................43

*Herring v. New York*, 422 U.S. 853 (1975) ...............................................50

*Irvin v. Dowd*, 366 U.S. 717 (1961) ..........................................................13

*Johnson v. Williams*, 133 S. Ct. 1088 (2013) ............................................16

*Jones v. Clarke*, 783 F.3d 987 (4th Cir. 2015) ............................................48

*Jones v. Cooper*, 311 F.3d 306 (4th Cir. 2002) ............................................9

*Jones v. Polk*, 401 F.3d 257 (4th Cir. 2005) ............................................26

*Juniper v. Davis*, 737 F.3d 288 (4th Cir. 2013)............................................54

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ............................................44

*Kyles v. Whitley*, 514 U.S. 419 (1995) ............................................34, 37

*L.J. v. Wilbon*, 633 F.3d 297 (4th Cir. 2011) ............................................54

*Lockett v. Ohio*, 438 U.S. 586 (1978) ............................................26

*Martinez v. Ryan*, 566 U.S. 1 (2012) ............................................50, 53

*McDonough Power Equipment v. Greenwood*,
464 U.S. 548 (1984) ............................................7, 8, 9, 12

*McCoy* v. *North Carolina*, 494 U.S. 433 (1990) ............................................25

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ............................................31, 53

*Morva v. Zook*, 821 F.3d 517 (4th Cir. 2016) ............................................23

*Napue v. Illinois*, 360 U.S. 264 (1959) ............................................34

*Payne* v. *Tennessee*, 501 U.S. 808 (1991) ............................................26

*Porter v. McCollum*, 558 U.S. 30 (2009) ............................................9

*Porter v. Zook*, 803 F.3d 694 (4th Cir. 2015) ............................................*passim*

*Robinson v. Polk*, 438 F.3d 350 (4th Cir. 2006) ............................................20

*Rompilla v. Beard*, 545 U.S. 374 (2005) ............................................40, 46

*Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) ...............................................21

*Simmons v. South Carolina*, 512 U.S. 154 (1994) ........................24, 25, 50

*Skipper v. South Carolina*, 476 U.S. 1 (1986) ..............................24, 26, 50

*Smith v. Phillips*, 455 U.S. 209 (1982) ...........................................8, 13, 37

*Strickland v. Washington*, 466 U.S. 668 (1984) ...............................*passim*

*Strickler v. Greene*, 527 U.S. 263 (1999) ..................................................36

*Sturgeon v. Chandler*, 552 F.3d 604 (7th Cir. 2009) .................................15

*Tennard v. Dretke*, 542 U.S. 274 (2004) ...........................................25, 26

*Tice v. Johnson*, 647 F.3d 87 (4th Cir. 2011) ...........................................47

*Townes v. Jarvis*, 577 F.3d 543 (4th Cir. 2009) ........................................43

*Townsend v. Sain*, 372 U.S. 293 (1963) ...................................................13

*United States v. Agurs*, 427 U.S. 97 (1976) ..............................................37

*United States v. Boney*, 977 F.2d 624 (D.C. Cir. 1992) ............................12

*United States v. Colombo*, 869 F.2d 149 (2d Cir. 1989) ..........................12

*United States v. Cronic*, 466 U.S. 648 (1984) ..........................................26

*United States v. Mason*, 52 F.3d 1286 (4th Cir. 1995) .............................18

*Walker v. True*, 399 F.3d 315 (4th Cir. 2005) ..........................................21

*Wiggins v. Smith*, 539 U.S. 510 (2003) ........................................32, 45, 46

*Williams v. Taylor*, 529 U.S. 420 (2000) ....................................................8

*Winston v. Pearson*, 683 F.3d 489 (4th Cir. 2012).....................................54

*Youngblood v. West Virginia*, 547 U.S. 867 (2006) ..................................36

## Federal Statutes and Rules

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 2241 .......................................................................................1

28 U.S.C. § 2253 .......................................................................................1

28 U.S.C. § 2254 ...............................................................................*passim*

Federal Rule of Appellate Procedure 4 .......................................................1

## State Cases

*Caterpillar Tractor Co. v. Hulvey*, 353 S.E.2d 747 (Va. 1987) ...............17

*Halifax Corp. v. First Union National Bank*,
546 S.E.2d 696 (Va. 2001) .......................................................................43

*Jackson v. Commonwealth*, 590 S.E.2d 520 (Va. 2004) ..........................18

*Jenkins v. Commonwealth*, 423 S.E.2d 360 (Va. 1992) ...........................18

*Kearns v. Hall*, 91 S.E.2d 648 (Va. 1956) ...............................................20

*Lawlor v. Commonwealth*, 738 S.E.2d 847 (Va. 2013) ............................26

*McGhee v. Commonwealth*, 248 S.E.2d 808 (Va. 1978) ..........................46

*Porter v. Commonwealth*, 661 S.E.2d 415 (Va. 2008) ...................1, 24, 25

*Prieto v. Warden*, 748 S.E.2d 94 (Va. 2013) ...........................................18

*Sloane v. Gen. Motors Corp.*, 457 S.E.2d 51 (Va. 1995) .........................43

*Teleguz v. Warden*, 688 S.E.2d 865 (Va. 2010) ......................................18

vii

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over Porter's petition under 28 U.S.C. §§ 2241, 2254. This Court has jurisdiction over Porter's appeal under 28 U.S.C. §§ 1291, 2253. The district court's judgment became final on September 22, 2016, when it denied Porter's motion to alter or amend judgment. Porter filed a timely notice of appeal of that final order on October 21, 2016. Fed. R. App. P. 4(a)(1).

# STATEMENT OF ISSUES

1. Whether Porter was convicted and sentenced to death by a biased jury.

2. Whether the state court violated Porter's rights under the Eighth and Fourteenth Amendments by denying a risk assessment expert.

3. Whether prosecutors violated *Brady* and *Napue* regarding Officer Reaves's history of unprofessional conduct.

4. Whether trial counsel rendered ineffective assistance when they: failed to investigate Reaves's unprofessional conduct; failed to employ powerful exculpatory evidence; failed to investigate aggravating evidence; failed to obtain a jury instruction on first-degree murder; failed to object to the court's improper curative instructions and comments during closing argument; and failed to investigate Reaves's shooting.

# STATEMENT OF THE CASE

Thomas Porter's convictions and death sentence were imposed by a jury and affirmed on appeal. *Porter v. Commonwealth*, 661 S.E.2d 415 (Va. 2008). Porter's state habeas petition was dismissed as a matter of law. J.A.2428-46.

On August 21, 2014, the district court granted the Warden's motion to dismiss Porter's federal habeas petition, J.A.2804-80. Both the state and the federal

courts refused to provide a hearing and denied all of Porter's discovery requests. Nonetheless, the state and federal courts dismissed Porter's claims as a matter of law based on evidence proffered by the Warden.

The district court granted a certificate of appealability (COA) regarding all claims, J.A.2879. This Court found there was no final order from which Porter could appeal because the district court had not adjudicated all of the claims and remanded the matter to the district court. *Porter v. Zook*, 803 F.3d 694 (4th Cir. 2015). On remand, the district court dismissed the previously unadjudicated claim and denied a COA on it. J.A.3035. This Court granted Porter's motion to expand the COA to add the claim the district court had dismissed on remand. ECF No. 18.

## STATEMENT OF FACTS

Porter testified and admitted that he shot Stanley Reaves. The central issue at trial was how circumstances leading up to the shooting impacted Porter's degree of guilt and the appropriate punishment. According to prosecutors, Porter identified Reaves as a threat while he was still inside Valorie Arrington's second-floor apartment, and he left the apartment committed to confronting Reaves and preventing Reaves from exercising any authority over him. J.A.1168-73.

According to Porter, he left the apartment unaware that Reaves was outside or that he had any interest in Porter. Porter was surprised and confused when Reaves grabbed him without explanation. Porter attempted to withdraw from the

confrontation but Reaves drew his weapon—again without explanation—causing Porter to believe Reaves was going to shoot him. To prevent this, Porter drew his own gun and fired multiple shots. Then he took Reaves's gun from the sidewalk and fled.

Defense counsel argued the crime was committed in self-defense. J.A.1145. They put Porter on the stand to testify that he shot Reaves because he feared for his life. J.A.976. The prosecution argued that Porter's account was "fictional," J.A.1236, and that Reaves was the "kind of police officer [who] would talk to somebody first," J.A.1466.

As the district court found, "the crucial inquiry . . . [was] not whether the officer was in fact engaged at the time he was killed in performing a law enforcement duty but, rather, whether [Porter] acted with the purpose of interfering with what *he perceived* to be an officer's performance of a law enforcement duty." J.A.2833 (emphasis added).

## SUMMARY OF ARGUMENT

No court has provided Porter an evidentiary hearing or any kind of discovery or expert assistance to develop support for his claims. Consequently, Porter has been denied a meaningful opportunity to prove that his rights to an impartial jury and due process were violated. In violation of the Eighth and Fourteenth Amendments he was denied assistance of a risk assessment expert to provide

3

evidence of the probability that he would not present a future danger, a prerequisite for death eligibility. Although Porter testified that the victim was not acting in a manner consistent with his duties as a law enforcement officer, the prosecution concealed, and trial counsel unreasonably failed to investigate, evidence of the victim's unprofessional conduct. Counsel also unreasonably failed to investigate aggravating evidence, employ powerful exculpatory and mitigating evidence, and ensure jurors were instructed in a way that allowed them to give effect to evidence favorable to the defense, thus undermining confidence in jurors' decisions regarding guilt and sentence.

State post-conviction counsel unreasonably failed to assert substantial claims regarding trial counsel's performance, including the failure to object to the court's improper curative instructions and comments during closing argument and the failure to adequately investigate the murder.

## ARGUMENT

### I.    Porter Was Convicted and Sentenced to Death by a Biased Jury.

Porter was charged with the murder of Norfolk Police Officer Reaves. The shooting, Porter's flight, his arrest, and extradition "generated extensive media coverage." *Porter*, 803 F.3d at 696. Concerned that an impartial jury could not be empaneled in Norfolk, Porter moved for a change of venue. Prosecutors consented to the motion, and the court transferred Porter's trial to Arlington, where he was

convicted and sentenced to death.

At the beginning of voir dire, the court told venire members that the victim was a Norfolk police officer. J.A.227. Counsel questioned venire members about their knowledge of the case and their relationships with law enforcement to discern potential bias. Counsel asked the venire panel that included Bruce Treakle, "Have you, any member of your family or close personal friend worked for or with any law enforcement organization, either as an employee or on a volunteer basis?" J.A.250-51. Treakle disclosed that his nephew was an Arlington police officer and denied this relationship would impact his ability to be fair and impartial. J.A.251-52. Based on these answers, counsel did not move to strike Treakle, J.A.320, so he sat on the jury and passed judgment on Porter, J.A.387-89.

At the sentencing phase, prosecutors presented several law enforcement witnesses who testified about violent interactions with Porter. A deputy sheriff who worked in the Norfolk Jail testified that Porter resisted deputies' attempts to transport him by requiring deputies to forcibly dress him, kicking one deputy in the head, and charging at another deputy. J.A.1331-37. Correctional officers claimed that Porter had been violent in their custody, including attacking one officer while being served food through the tray slot. J.A.1270-72; J.A.1278-86. A Norfolk investigator testified Porter tried to run down law enforcement personnel who had stopped him for driving a stolen vehicle and assaulted a police detective until three

officers intervened. J.A.1318-25. A Portsmouth police officer testified he tracked Porter into the woods where Porter refused to comply with the officer's orders to reveal himself. The officer claimed that, once apprehended, Porter was the only person he ever felt he had to keep his weapon trained on until backup arrived. J.A.1292-99.

Prosecutors also presented testimony from Reaves's widow and sister. Each woman testified to the devastating impact of Reaves's death on their family. J.A.1343-60.

In closing argument, the prosecutor urged jurors to sentence Porter to death because he posed a "future danger to anyone else who may encounter him in any similar fashion whatsoever as . . . Reaves did," J.A.1489, specifically reminding jurors that Porter had assaulted "deputy sheriffs." J.A.1571.

After his convictions and death sentences were affirmed on appeal, Porter's habeas counsel and a law student interviewed jurors, including Treakle. When asked which witnesses made the greatest impression on him during the trial, Treakle confided "he found [the victim's widow's] testimony moving[,]" difficult to sit through, "and very emotional . . . because his brother is a sheriff's officer in Norfolk."[1] J.A.1718; J.A.1721; J.A.1651-54. Treakle ended the interview shortly thereafter and later refused to continue the conversation with counsel. Counsel also

---

[1] Pernell Treakle confirmed he is a sheriff's deputy in Chesapeake. J.A.1721.

interviewed Alternate Juror Lautenschlager who confirmed another juror confided he had a brother in law enforcement. J.A.1722-23. During voir dire, Treakle had failed to disclose this "second and closer relative, a brother, who also worked in law enforcement . . . in Chesapeake." *Porter*, 803 F.3d, at 697.

Of all the jurisdictions bordering Norfolk, Chesapeake was particularly impacted by Reaves's death for several reasons, including: Reaves and his family lived in Chesapeake; Chesapeake law enforcement had participated in the manhunt to find Porte; and Chesapeake Police Officer Michael Saffran had been killed in the line of duty just three weeks before Reaves.[2] Chesapeake never had a chance to punish Saffran's killer, because he was killed in an exchange of gunfire with officers. J.A.1849. The community honored Reaves and Saffran in a joint memorial service. J.A.1863.

Porter alleges that Treakle failed to answer a material voir dire question honestly and that an honest answer would have been grounds for a for-cause challenge. *See McDonough Power Equipment v. Greenwood*, 464 U.S. 548, 556 (1984); *Conaway v. Polk*, 453 F.3d 567, 585 (4th Cir. 2006). Porter also alleges that his right to an impartial jury was violated because Treakle was actually biased

---

[2] The uncanny similarities between Michael Saffran and Reaves could not have escaped the community. Both men had served in the military, were newcomers to the Tidewater law enforcement community, and each was survived by a wife and two children. Their fathers had both retired from the Baltimore City Police. J.A.1863-64; J.A.1843-45; J.A.1848.

against him. *See Smith v. Phillips*, 455 U.S. 209 (1982).

The state court granted the Warden's motion to dismiss the petition without first granting Porter an evidentiary hearing or any other requested process to prove his allegations were true. The state court's process to determine facts was itself an unreasonable application of clearly established federal law. The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Phillips*, 455 U.S. at 215. *See also Williams v. Taylor*, 529 U.S. 420, 441-42 (2000) (juror's omission of accurate responses during voir dire disclosed need for hearing); *McDonough*, 464 U.S. at 551-52; *Dennis v. United States*, 339 U.S. 162, 171-72 (1950) ("Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury."). A hearing allows counsel to question the juror about his "memory, reasons for acting as he did, and his understanding of the consequences of his actions," and permits the court "to observe the juror's demeanor under cross-examination and to evaluate his answers in light of the particular circumstances of the case." *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring). The state court ignored clearly established law when it refused Porter's request for a hearing to answer lingering questions about Treakle's incomplete and dishonest voir dire answers and to ascertain whether Treakle harbored an actual bias against Porter.

## A.        The *McDonough* Claim

*McDonough* "set[s] forth a particularized test for determining whether a new trial is required in the context of juror deceit during voir dire." *Jones v. Cooper*, 311 F.3d 306, 310 (4th Cir. 2002). First, "a party must demonstrate that a juror failed to answer honestly a material question on voir dire." Second, the party must "show that a correct response would have provided a valid basis for a" for-cause challenge. *McDonough*, 464 U.S. at 556.[3] This Court has found a third part to the *McDonough* test, which requires a litigant to show "that the fairness of his trial was affected by either the juror's motives for concealing the information or the reasons that affect the juror's impartiality." *Conaway*, 453 F.3d at 585.[4]

Treakle failed to completely and truthfully answer the voir dire question posed to him. When asked to reveal his relationships with law enforcement officers, he disclosed only his nephew and concealed the existence of his brother. The state court skirted these undisputed facts by finding that counsel had deprived Treakle of the opportunity to answer the question fully and honestly because counsel did not ask him if he had any *other* close personal relationships with law enforcement officers. J.A.2435. The state court's dismissal of this claim was based

---

[3] The state court did not address the second part of the *McDonough* test, therefore this Court must adjudicate it *de novo. See, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 39 (2009).

[4] Porter does not waive his argument that Supreme Court precedent does not impose this third requirement.

on this unreasonable determination of facts and the claim should be reviewed *de novo* pursuant to § 2254(d)(2).

As was the practice during voir dire, counsel asked an initial question about relationships with people in law enforcement. Venire members indicated they had a response by raising their hands. Counsel then questioned each person with his hand raised about his relationships with law enforcement and whether that would impact his ability to be impartial. At no time during voir dire did prosecutors or defense counsel ask anyone if he had additional responses to the question he had just answered. Venire members understood they were expected to answer the question completely.

The initial exchange between Treakle and counsel was not Treakle's last opportunity to give a complete and honest answer. After counsel questioned Treakle and others about their relationships with law enforcement, counsel gave every panel member another opportunity to respond to the question. He asked, "Any more hands?" J.A.255. Treakle did not raise his hand and answer counsel's question completely and honestly.

Moreover, it was the practice of venire members questioned with Treakle to return to prior questions in order to provide complete and accurate answers. J.A.233-36 (five venire members redirected voir dire to prosecutor's previous question); J.A.260, J.A.263 (alternate juror supplemented his prior answer).

Treakle heard all of these additional answers but did not complete his response.

In *Conaway*, this Court confronted a similar situation. In response to a question about whether he knew any of the people on the state's witness list, the juror admitted familiarity with the sheriff. He did not reveal that he was also related to one of the co-defendants who was also on the state's witness list. 453 F.3d at 585. This Court found that the state court unreasonably concluded these facts were insufficient to pass the first part of the *McDonough* test. *Id.* Like the *Conaway* juror, Treakle revealed one relationship and concealed another during voir dire. He failed to answer honestly a material question. The state court's conclusion otherwise was unreasonable.

If Treakle had disclosed pretrial what he disclosed postconviction—that his brother was a Chesapeake sheriff's officer and that this relationship would impact the way he judged witnesses and weighed evidence—that information would have been the basis for a valid challenge. Treakle's relationship with a law enforcement officer from the community where the crime was committed made him unique among a panel full of people with law enforcement connections. And he was singularly unqualified because no other panel member professed that those relationships would impact the way they judged witnesses and weighed evidence. Honest responses from Treakle would have drawn a valid for-cause challenge from counsel.

Finally, as in *Conaway*, Treakle's dishonesty itself is evidence of his bias against Porter. *Id.* at 588; *see also McDonough*, 464 U.S. at 556 (Blackmun, J., concurring) ("[I]n most cases, the honesty or dishonesty of a juror's response is the best initial indicator of whether the juror in fact was impartial."); *United States v. Colombo*, 869 F.2d 149, 152 (2d Cir. 1989); *Dyer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998) (en banc); *Burton v. Johnson*, 948 F.2d 1150, 1159 (10th Cir. 1991); *United States v. Boney*, 977 F.2d 624, 634 (D.C. Cir. 1992) ("[F]ailing to disclose relevant information during voir dire itself raises substantial questions about the juror's possible bias."). Treakle disclosed his more distant relationship with a law enforcement officer, all the while concealing his closer relationship with a law enforcement officer from a jurisdiction adjacent to that where the crime occurred. He was informed that the victim was a police officer from that area and he still remained silent. Porter alleged that Treakle purposefully concealed this information in order to avoid being struck so he could sit in judgment of Porter. These allegations were sufficient to survive a motion to dismiss and justify a hearing in state court.

The district court erred when it dismissed this claim without first granting Porter a hearing in order to fully develop it and prove Treakle was biased against Porter. Porter submitted all the evidence he gathered by voluntary cooperation to

the state court, including the affidavit of law student Maryl Sattler,[5] an affidavit from Treakle's brother, an affidavit from an alternate juror, and the transcript of his trial. Because the state court refused Porter's requests for discovery and an evidentiary hearing, he was unable to generate further evidence in state court. Although Porter may not be able to prevail on the merits on this record, he has demonstrated his right to substantiate his allegations at an evidentiary hearing. *See Townsend v. Sain*, 372 U.S. 293, 313 (1963). This Court should remand the claim to the district court with instructions to permit discovery and conduct a hearing.

## B.    The Actual Bias Claim

The Sixth and Fourteenth Amendments guaranteed Porter the right to be tried by an impartial jury. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Involvement of a juror who is "actually biased" or "biased in fact" offends minimal due process which requires all jurors be "capable and willing to decide the case solely on the evidence" presented at trial. *See Phillips*, 455 U.S. at 217. Actual bias "stems from a preset disposition not to decide an issue impartially." *Fields v. Brown*, 503 F.3d 755, 766 (9th Cir. 2007); *see also Phillips*, 455 U.S. at 215.

Porter alleges Treakle was actually biased against Porter because of Treakle's relationship with his brother, a Chesapeake Sheriff's Officer. Treakle

---

[5] Sattler graduated from law school magna cum laude in 2011, and clerked for Chief Judge Goodwin (USDC SD WV). She is a member of the bar in good standing.

told Porter's habeas counsel and Sattler that he found Treva Reaves a compelling and powerful witness *because* he has a brother in law enforcement. J.A.1719. Porter alleges that this relationship indicates Treakle was not indifferent to Porter's case, and it impacted Treakle's perception of the evidence and his ultimate decisions to convict and sentence Porter to death. Mrs. Reaves, the first witness of the trial, set the tone of the entire trial for Treakle. J.A.401-08. Her testimony called to mind his brother who also put his life "on the line every day for the community." J.A.1719. It would only be natural for Treakle to think about his brother when he heard Officers Bretsch and Dever testify about finding Reaves's body, J.A.436-42, J.A.462-75; to imagine his brother's family coping if his brother were killed when Mrs. Reaves testified how the loss affected her and their children, J.A.1348-60; and to worry about his brother's safety when he heard testimony about Porter's contentious interactions with law enforcement officers, especially those in jails and prisons, *see, e.g.*, J.A.1270-72, J.A.1278-86, J.A.1292-99, J.A.1318-25, J.A.1331-37. If Porter can prove his allegations and substantiate his proffered facts, then relief must be granted.

In his federal petition, Porter argued that the district court must review his actual bias claim *de novo* because the claim was presented to, but not adjudicated by, the state court. J.A.2529-34. The district court granted the Warden's motion to dismiss Porter's petition without addressing Porter's actual bias claim. On appeal,

this Court found that the district court had not entered final judgment because it did not adjudicate the actual bias claim. This Court remanded for adjudication of the unresolved claim and entry of final judgment. *Porter*, 803 F.3d at 695.

The district court dismissed the claim without holding a hearing or facilitating further factual development.

### 1.    The state court did not adjudicate this claim.

The district court agreed with Porter that the state court "did not address whether Bruce Treakle was actually biased in connection with the juror bias claim," J.A.2942, but concluded the state court's finding that Porter had "provided no admissible evidence that . . . [Treakle] was biased against petitioner as a result of his brother's employment" in the context of an ineffective assistance of counsel claim, was the equivalent of an adjudication on the merits of the actual bias claim. J.A.2944.[6]

The district court held that because, in its estimation, the state court would have denied the claim on the merits had it actually adjudicated the claim, then the federal courts must apply § 2254(d) deference to that non-adjudication. The express language of § 2254(d), however, limits its application to instances where a state court has "adjudicated" a claim on its merits. Nothing remotely suggests that

---

[6] The district court relied on *Sturgeon v. Chandler*, 552 F.3d 604 (7th Cir. 2009) and *Albrecht v. Horn*, 485 F.3d 103 (3d Cir. 2007), for this maneuver, whose propriety is a question of first impression for this Court.

15

similar deference is required when a state court addresses some aspect of a claim in the context of adjudicating another claim. Such deference would be inconsistent with the purpose of § 2254(d), whose aim is to ensure federal courts show proper deference to a state court's adjudication. There is no similar justification for showing deference to a decision the state court did not reach.[7]

"When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013). The state court's opinion was well-organized and followed a consistent pattern. First, it identified the claim by number and summarized it. Then it identified case law and referenced the record in support of its decision. Finally, it announced the decision. *See, e.g.*, J.A.2436-37. The state court addressed every claim it considered in this manner, and it made no mention

_____

[7] Ineffective-assistance-of-counsel claims are subject to a more burdensome standard than the underlying substantive claim. Just because the state court concluded that a litigant was unable to meet the demanding *Strickland* standard does not mean he will be unable to prove the substantive claim. *Cf. Benge v. Johnson*, 474 F.3d 236, 246 (6th Cir. 2007) (holding that state court's plain error review of substantive claim was not an adjudication on the merits of his related IAC claim for purposes of § 2254(d) because the IAC claim was subject to a less burdensome standard). A *Strickland* claim requires Porter to prove that but for his counsel's deficient performance, there was a reasonable probability of a different outcome. For the underlying actual bias claim, Porter need only prove that Treakle was actually biased against him. Moreover, the only question before the state court regarding the actual bias claim was whether it must be dismissed as a matter of law, and Porter was denied any opportunity to develop factual support for it.

of the actual bias claim. It defies logic to conclude that the state court varied from this pattern to decide one claim sub silentio in the context of another claim. The inescapable conclusion is that the state court inadvertently overlooked the claim.

### 2. The state court did not exclude Sattler's affidavit because of a rule against jurors impeaching their own verdict.

When addressing Porter's alternative claim alleging ineffective assistance of counsel, the state court found that Porter had "provided no admissible evidence that [Treakle] was biased against petitioner as a result of his brother's employment." J.A.2445. Although neither party relied on, and the state court did not cite *Caterpillar Tractor Co. v. Hulvey*, 353 S.E.2d 747 (Va. 1987), or reference the rule in that case, the district court concluded that the state court had "apparently relied upon the general rule that the testimony of jurors should not be received to impeach their verdict," to exclude Sattler's affidavit. J.A.2943 (citing *Caterpillar*, 353 S.E.2d at 750-51) (internal quotation marks omitted). The record and the state court decision do not support that conclusion.

In support of his juror claims, Porter submitted to the state court several pieces of evidence, including an affidavit from Sattler. Sattler's affidavit memorialized a brief interview with Treakle. Treakle had refused to sign an affidavit and Porter had no ability to compel him. The Warden filed a motion to strike several affidavits Porter submitted, including Sattler's affidavit because they contained hearsay. J.A.2273; J.A.2275. Porter responded that Sattler's affidavit

17

supported his need for discovery and an evidentiary hearing, and that it was a proffer of the minimum of what he would be able to establish at a hearing where he would be able to compel Treakle and others to testify under oath. J.A.2301-04; *see also United States v. Mason*, 52 F.3d 1286, 1292 (4th Cir. 1995). Neither party's pleading cited *Caterpillar* or argued about the rule for which it stands.

When the Supreme Court of Virginia has considered the applicability of the rule in *Caterpillar*, it has done so explicitly. *See, e.g., Prieto v. Warden*, 748 S.E.2d 94, 103 (Va. 2013) (citing *Caterpillar* but refusing to strike juror's affidavit stating that he wanted the defendant to testify because he believed the defendant owed the jury an explanation for his actions and admitting juror's belief that life in prison was only 50 years); *Jackson v. Commonwealth*, 590 S.E.2d 520, 530-32 (Va. 2004) (citing *Caterpillar* and affirming trial court's decision to hold hearing and receive juror testimony when appellant argued jurors improperly discussed the case before close of evidence); *Teleguz v. Warden*, 688 S.E.2d 865, 874 (Va. 2010); *Jenkins v. Commonwealth*, 423 S.E.2d 360, 370 (Va. 1992). In this case, the state court's decision on the Warden's motion to strike Porter's affidavits speaks only in terms of hearsay and hearsay exceptions. *See* J.A.2445-46 (denying Warden's motion to strike and stating intention to "apply the appropriate evidentiary rules and the petitioner's assertions that *certain statements are not being offered for the truth of the matter asserted* when considering the

admissibility of the exhibits and of any statements contained in the exhibits"
(emphasis added)).

The state court was referring to the Warden's arguments regarding hearsay
when it found Porter had "provided no admissible evidence that [Treakle] was
biased against petitioner as a result of his brother's employment," J.A.2445, and
not a rule against jurors impeaching their own verdict.

### 3. The state court's decision to dismiss the related ineffective assistance of counsel claim was based on an unreasonable determination of facts.

In dismissing the ineffective assistance of counsel claim, the state court
found that Porter "provided no admissible evidence that [Treakle] was biased
against petitioner as a result of his brother's employment." J.A.2445. This finding
is roundly rebutted by the record before the state court. Setting aside Sattler's
affidavit, Porter also presented an affidavit from Treakle's brother, the transcript,
and numerous press articles describing the impact of Reaves's death on the
Chesapeake law enforcement community.[8]

Moreover, Porter argued that Sattler's affidavit was a proffer of the
admissible evidence he would be able to present at an evidentiary hearing where he

---

[8] It is true that these materials were not sufficient to *prove* that Treakle was biased,
but Porter was not required to prove Treakle was biased at the motion to dismiss
stage. The question for the state court was whether Porter had stated allegations
that, if proven true, warranted relief. And he had.

would be able to subpoena witnesses, including Treakle. This is longstanding practice in Virginia. For example, in *Kearns v. Hall*, plaintiff's counsel interviewed jurors and learned they had performed unauthorized tests. 91 S.E.2d 648, 650 (Va. 1956). Counsel submitted only his own affidavit recounting what jurors told him in support of a motion to set aside the verdict. *Id.* at 649-50. The Virginia Supreme Court held that although counsel's affidavit was not admissible evidence, it was sufficient to trigger the court's obligation to hold a hearing and receive testimony from jurors. *Id.* at 652-53.

The Supreme Court has recently emphasized the importance of considering the posture of the case when deciding whether a state court's decision was based on an unreasonable determination of facts. In *Brumfield v. Cain*, petitioner alleged that he was intellectually disabled and therefore the Eight Amendment prohibited his execution. He requested a hearing in state court to prove this allegation. 135 S. Ct. 2269, 2273 (2015). The state court dismissed the claim without holding a hearing. *Id.* at 2275. The Supreme Court admonished that it was "critical to remember" petitioner was not obligated to prove the merits of his claim in order to obtain a hearing. *Id.* at 2281. This Court recognized as much more than a decade ago. *See, e.g.*, *Robinson v. Polk*, 438 F.3d 350, 367 (4th Cir. 2006) ("[W]hether inadmissible evidence can be used *at an evidentiary hearing* is a different question from whether inadmissible evidence can support a claim for *entitlement to an*

20

*evidentiary hearing*."). In so holding, this Court noted that North Carolina law did not require that an MAR be accompanied by admissible evidence in order to obtain an evidentiary hearing. *Id.* at 367. Virginia law is similarly bereft of such a restriction. "Indeed, it would create a "classic catch-22" if a[ habeas petitioner] were obliged to submit admissible evidence . . . in order to be accorded an evidentiary hearing, when the defendant is seeking the hearing because he cannot, without subpoena power or mechanisms of discovery, otherwise secure such evidence." *Conaway*, 453 F.3d at 584.

### 4. Porter has never had the opportunity to prove the merits of this claim.

The district court held in the alternative that Porter had failed to prove the merits of his claim in federal habeas proceedings. J.A.2951-58. But the only question for the district court was whether the Warden's motion to dismiss Porter's claim as a matter of law should be granted. In ruling on such a motion the district court was obliged to assume all facts pleaded by Porter to be true. *See Rouse v. Lee*, 339 F.3d 238, 248 n.8 (4th Cir. 2003); *Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005). Rather than presume the evidence in support of Porter's allegation to be true, the district court dismissed the claim because "Treakle's innocuous

statements [did] not indicate that he was biased." J.A.2956.[9]

In order to resolve Porter's well-pled claim that Treakle was actually biased against him, the district court should have held a hearing. *See, e.g.*, *Conaway*, 453 F.3d at 591 ("As the Supreme Court has 'long held,' the 'remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.'" (quoting *Phillips*, 455 U.S. at 215)). *See also Barnes v. Joyner*, 751 F.3d 229, 243 (4th Cir. 2014); *Billings v. Polk*, 441 F.3d 238, 246 n.4 (4th Cir. 2006); *cf. Porter*, 803 F.3d at 699 (on remand district court may conduct a hearing).

The district court erred when it granted the Warden's motion to dismiss Porter's claim as a matter of law without providing any discovery, compulsory process, or a hearing. This Court should remand the claim with instructions to grant discovery and conduct a hearing.

---

[9] In dismissing this claim, the district court made presumptions about Treakle that were unfavorable to Porter. *See, e.g.*, J.A.2954, J.A.2957 (describing Treakle as "honest").

## II.    The State Court Violated Porter's Rights Under the Eighth and Fourteenth Amendments by Denying the Assistance of a Risk Assessment Expert[10]

The state court unreasonably applied clearly established federal law when it rejected Porter's arguments he was constitutionally entitled to present individualized risk assessment testimony as mitigating evidence, J.A.1627; J.A.1629-30, and in rebuttal to aggravating evidence, J.A.1626-30. The district court erred by failing to adjudicate Porter's constitutional arguments.

Porter moved pretrial for appointment of an expert to provide risk assessment testimony to assist jurors in determining whether there was a probability that, if sentenced to life, Porter would commit serious acts of violence that would pose a continuing threat to society. J.A.66-178. The assessment would have considered Porter's "prior behavior while [incarcerated], appraisals of his security requirements during prior incarceration, his age, his level of educational attainment, and other [personal] features and characteristics," *see* J.A.91, and Porter's unadjudicated criminal conduct and other behavior. The assessment would determine the setting and timespan within which Porter's violent conduct might occur, the base rate (frequency) of serious violence in that setting, and Porter's individual characteristics and record in relation to the likelihood of violence in that

---

[10] In *Morva v. Zook*, a panel of this Court interpreted a similar Eighth Amendment claim to be a Sixth Amendment claim and then rejected it. 821 F.3d 517, 524-27 (4th Cir. 2016). The Court did not address the Fourteenth Amendment claim.

setting. J.A.187; J.A.199; J.A.66-77; J.A.91. The trial court denied Porter's motion. J.A.206-07. *See* J.A.56-6; J.A.196-97.

The state court held that the only evidence that could be used to rebut the prosecution's evidence of future dangerousness were incidents from Porter's past. *Porter*, 661 S.E.2d at 438-39. Testimony about Porter's individualized risk assessment was irrelevant and inadmissible. *Id.*

When prosecutors argue a defendant is death-eligible based on a prediction of future dangerousness, the defendant must be allowed to present rebuttal evidence. *See Skipper v. South Carolina*, 476 U.S. 1, 5 n.1 (1986); *Simmons v. South Carolina*, 512 U.S. 154, 164 (1994). Porter's proffered rebuttal evidence showed: (1) information particular to Porter—including age, education level, and prior behavior while incarcerated—indicated he would make a good adjustment to prison; and (2) those specific factors—when compared to reliable statistical information—have been scientifically proven to indicate he would adjust well to prison.

The state court's ruling that the only information relevant to an assessment of future dangerousness is past behavior was unreasonable. *Simmons*, 512 U.S. at 164 (when prosecutor argues defendant should be sentenced to death because he will pose a future danger, due process requires defendant be permitted to rebut the allegation with information about *where* he will live the rest of his life).

24

Additionally, the state court unreasonably limited Porter's ability to explain the significance of his past behavior by requiring jurors to estimate the probability of Porter's future dangerousness based on past and current factors without allowing Porter to explain which factors have been scientifically proven to be most reliable in making such predictions. Porter was entitled to explain the context of his prior acts and inferences jurors should draw from those acts. *See id.* at 161 (due process forbids execution on basis of information which defendant had no opportunity to explain).

The state court also limited the universe of admissible mitigating evidence, in violation of the Eighth Amendment. It held that only evidence of the defendant's character, prior record, or circumstances of the offense may be admitted as mitigating evidence, and that predictions about future behavior, like adaptability to incarceration, could only be admitted to the extent that it relied solely upon the defendant's criminal record and prior history. *Porter*, 661 S.E.2d at 437-41. *But see Simmons*, 512 U.S. at 163 ("The defendant's character, prior criminal history, mental capacity, background, and age *are just a few of the many factors* . . . that a jury may consider." (emphasis added). The "mere declaration that evidence is 'legally irrelevant' to mitigation cannot bar the consideration of that evidence if the sentencer could reasonably find that it warrants a sentence less than death." *McCoy v. North Carolina*, 494 U.S. 433, 441 (1990). *See also Tennard v. Dretke*, 542 U.S.

274, 284-85 (2004); *Jones v. Polk*, 401 F.3d 257, 263 (4th Cir. 2005). Forward-looking evidence such as a defendant's potential to reform, repent, raise his children, be a positive influence on other inmates, make meaningful contributions to society, and adjust well to incarceration are all mitigating factors that involve some prediction about the future—informed both by the defendant's past behavior and likely future conditions—and are relevant mitigating factors under the Eighth Amendment. *See, e.g.*, *Payne* v. *Tennessee*, 501 U.S. 808, 822 (1991); *Skipper*, 476 U.S. at 4-5; *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

The district court did not address Porter's constitutional claims. Instead, the court evaluated Porter's claims under state law, with only passing reference to two Supreme Court cases—neither of which was cited by Porter in his petition or reply. J.A.2861 (citing *United States v. Cronic*, 466 U.S. 648 (1984); *Ake v. Oklahoma*, 470 U.S. 68 (1985)). The district court treated these claim as though they were based solely on the denial of expert assistance under *Cronic* or *Ake*. But the state court found that Porter could *never* avoid denial because the expert's evidence was inadmissible under state law. *See also Lawlor v. Commonwealth*, 738 S.E.2d 847, 882-85 (Va. 2013) (jurors assessing future dangerousness are not making a predictive judgment, so expert assessment testimony on prison violence is not relevant); *but see Buck v. Davis*, 2017 U.S. LEXIS 1429, at *33 (jurors assessing future dangerousness are making a "predictive judgment"). That decision runs

26

afoul of the Eighth and Fourteenth Amendments.

**III.  Jurors Were Deprived Of Evidence Necessary To Making Accurate Assessments Of Porter's Culpability At The Guilt And Sentencing Phases**

**A.  Counsel Failed to Reasonably Investigate Reaves's History of Unprofessional Conduct**

Porter testified he was surprised and confused when Reaves grabbed him without explanation outside the apartment and drew his weapon, and he believed Reaves was going to shoot him. Prosecutors argued Porter's account was "fictional," J.A.1236, and that Reaves was the "kind of police officer [who] would talk to somebody first," J.A.1466.

In state post-conviction, Porter alleged that trial counsel failed to investigate Reaves's background and history of unprofessional conduct as a Baltimore police officer, and that a reasonable investigation would have allowed counsel to rebut the prosecutor's accusation that Porter's testimony was "fiction." There were two distinct sources of powerful evidence from Reaves's history as a police officer that each supported Porter's account. The first was the public record related to two incidents in which misconduct on Reaves's part led to the death of persons either in his custody or sought by Reaves for questioning.[11]

---

[11] The second source was Reaves's personnel record in the custody of the Commonwealth at the time of Reaves's death, and unavailable to Porter. *See infra,* III.B.

27

As a result of counsel's inadequate investigation, jurors never learned of a June, 1994, incident in which a witness saw Reaves stop a bicyclist by blocking his path with Reaves's police cruiser. Reaves approached the bicyclist and, without "any conversation," pushed the person in the chest, knocking him to the ground. J.A.2041-47. Then Reaves inexplicably slashed the person's bicycle tires.[12]

When a previously uninvolved bystander, George Hite, objected to Reaves's actions, he was arrested for disorderly conduct. J.A.2049-55. Witnesses reported that Hite was in the custody of Reaves and another officer with his hands cuffed behind his back, when the second officer pulled Hite to his feet then swept Hite's legs out from under him. This caused Hite to hit his head on the sidewalk, an injury that ultimately resulted in Hite's death. "In a subsequent civil lawsuit, Officer Reaves stated he believed his fellow officer had acted appropriately, although eyewitnesses contradicted Reaves's version of events." J.A.2437.

Another fatal incident involving Reaves's unprofessional conduct occurred in 2001, when, in violation of department policy, Reaves chased a kid riding a dirt bike in his police cruiser. When Reaves's cruiser caught up to the dirt bike, the kid lost control of the bike, was thrown into a utility pole, and died of head

---

[12] A police internal affairs investigation charged Reaves with "malicious destruction." Reaves denied that he touched the person or the bicycle, but was found guilty and removed from the street. J.A.2011-12. A federal prosecutor investigating the bicycle and Hite incidents found Reaves's account "troubling," J.A.2129, and his "lack of candor" "disquieting," J.A.2127.

injuries. J.A.2437. Depriving jurors of this evidence prevented them from accurately assessing Porter's truthfulness, and from fairly evaluating the prosecutor's argument about Reaves's character.

The state court dismissed the claim as a matter of law based on facts not in the record, and on an unreasonable application of clearly established federal law. The state court found that: i.) Porter "acknowledge[d] that counsel was not on notice of Reaves's alleged prior employment history"; ii.) Reaves's personnel records "do not show any formal disciplinary proceedings and do not reference any instances of Officer Reaves inappropriately displaying or using his service weapon"; and iii.) in light of this absence of evidence, Porter failed to articulate how personnel records would bolster his testimony that Reaves forcefully confronted him with his gun drawn. J.A.2444.

Contrary to the state court's decision, counsel's lack of actual notice of the substance of Reaves's employment history does not absolve them of the duty to make a diligent investigation. This is especially true in this case because the defense alleged Reaves behaved in a way that was contrary to the way he would be expected to behave when performing his official duties. *Strickland v. Washington* does not require counsel to investigate only when put on actual notice of the fruit of the investigation; instead, counsel is required to make a "complete investigation," and only put "limitations on investigation" that are supported by

"reasonable professional judgments" in the particular circumstances of the case. 466 U.S. 668, 691 (1984).

Moreover, proffers from counsel do not establish they were unaware of the need to investigate Reaves's past behavior as a police officer. Defense counsel Atkins's proffer did not say whether Reaves was investigated, only that whatever investigation was done uncovered no information leading counsel to believe Reaves's service record was pertinent. J.A.2262. Defense counsel Migliozzi claimed he planned to subpoena or FOIA information in an "effort to investigate" Reaves, but simply never did. J.A.2258. Defense investigator Van Horn indicated she conducted no investigation of Reaves's history, and was never instructed to do so. J.A.2426.

The state court's second "finding"—that Reaves's personnel file contained no formal disciplinary proceedings and no reference to an inappropriate displaying Reaves's service weapon—is unreasonable and confounding. The state court could not know what information is in Reaves's personnel records because the records have never been released. The court's decision was unreasonable and based on invented facts unsupported by the state court record. § 2254(d)(2).[13]

The district court did not address Porter's argument that the state court's

---

[13] During state post-conviction proceedings, Porter was refused access to Reaves's employment records despite diligent efforts under FOIA. J.A.1762-71. He then requested the state court's assistance, J.A.2141-43, but was refused in the same order that dismissed his habeas petition, J.A.2445. *See infra*, III.B.

decision to dismiss the claim as a matter of law was unreasonable under §§ 2254(d)(1) and (d)(2). *See* J.A.2558-64, J.A.2753-56. Instead, the court improperly imposed the requirements of § 2254(e)(1) on its review under § 2254(d)(2), dismissing this claim because Porter had not rebutted the state court's finding—that trial counsel was not on actual notice of Reaves's "alleged prior employment history"—by clear and convincing evidence as required by (e)(1). J.A.2836-37. A federal court's (d)(2) assessment of a state court's decision is restricted to evidence before the state court and does not presume the state court's determination to be correct. The subsections address different circumstances and should not be merged. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

The district court found Porter failed to "identify any evidence his trial counsel possessed that 'would have led a reasonably competent attorney to investigate further.'" J.A.2837. The court also found evidence of Reaves's previous aggressive conduct while on patrol "would not have fit" trial counsel's arguments that Porter's response to Reaves's confrontation lacked premeditation or that Porter was not a future danger, and counsel "did not believe that the theory that Officer Reaves acted outside his official capacity was viable." *Id*.

Each of these findings is powerfully rebutted by counsel's arguments in the trial record. *See, e.g.*, J.A.1112-13 ("the series of actions" by Reaves "preceding

31

the shooting . . . constitute the overt act necessary to establish" an apprehension of imminent harm); 1132-37. Counsel believed Reaves acted outside his official capacity: "Our position certainly is that Officer Reaves went beyond what his duties were when he essentially violated his protocol by jumping out in front of Mr. Porter and grabbing him and getting at such close distance to him and then pulling out his weapon." J.A.1117-18.

The district court incorrectly required Porter to identify evidence of Reaves's history already in trial counsel's possession that should have led them to investigate Reaves's conduct in order to allege counsel failed to conduct a reasonable investigation. Porter need only show that a reasonable investigation would have uncovered such evidence. *Wiggins v. Smith*, 539 U.S. 510, 523, 525 (2003); *Strickland*, 466 U.S. at 690-91. Counsel unreasonably abandoned the investigation, although continuing to argue that Porter panicked when Reaves "went beyond . . . his duties," J.A.1117, and approached him in an inappropriately threatening manner with his gun drawn. *Cf. Wiggins*, 539 U.S. at 525; *see also* J.A.1225-34.

The district court found no prejudice because the trial court ruled Porter did not make out a case of self-defense and, therefore, evidence of Reaves's history of

aggressive police conduct was inadmissible.[14] But this is a circular and erroneous argument. The trial court's refusal to grant the instruction is the *result* of trial counsel's deficient investigation and resultant failure to provide significant evidence in support of the instruction needed to give effect to the defense's case, and *not* justification for inadequate investigation.

This Court should reverse the district court, find counsel's performance deficient, and remand for factual development and a hearing on the prejudice imposed as a result.

---

[14] The district court also found "Porter's theory of self-defense was contradicted by his own statements," J.A.2838, but the court cited only counsel's arguments. Porter's actual statements clearly distinguish between his thinking during the first shot and during those that followed. Porter testified he "thought [Reaves] was going to kill me because he looked angry at the time, so I was just worried for my safety." J.A.976; J.A.1035-36 (Porter agreed he "remember[ed] the first shot," but did not remember "the interval between after firing the first shot and when [he] stopped shooting"). Counsel's argument tracked this difference: "I believe the jury should have the opportunity to decide whether those facts support a theory of self-defense." J.A.1137; J.A.1145 ("I still believe it is a self-defense case"); J.A.1233 ("Mr. Porter thought that he was going to be killed that day. And that's why he pulled out his gun and shot him. He was not trying to prevent Officer Reaves from arresting him. All his actions that day say otherwise"). Arguments about premeditation were raised as alternatives and only with regard to subsequent shots, not to the exclusion of self-defense. *See, e.g.*, J.A.1137.

**B.    Material Evidence Regarding Reaves's History of Unprofessional Conduct was Improperly Concealed in Violation of *Brady v. Maryland* and *Napue v. Illinois***

The district court and state court erred by dismissing this claim based on a fundamental misunderstanding of the Supreme Court's *Brady* jurisprudence, and an unreasonable determination of facts. The government concealed evidence related to internal police investigations, disciplinary proceedings, and personnel records regarding Reaves's conduct as a police officer, including at least two instances of aggressive and unprofessional conduct while on duty, each ending in a person's death. The suppressed evidence is distinct from evidence available in the public record, and would have been disclosed to the Norfolk Police Department (NPD) when they investigated Reaves's background before hiring him. This information would have supported Porter's testimony that Reaves acted in a manner inconsistent with his official duties, causing Porter to fear for his safety. The government's suppression of this evidence prevented the defense from rebutting prosecutors' arguments that Porter's testimony was "fictional," J.A.1236, and Reaves was the "kind of police officer [who] would talk to somebody first," J.A.1466. Porter alleges both that this information was concealed by the NPD who assisted in Porter's prosecution, *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), and the Commonwealth had actual knowledge of the information concealed, *Napue v. Illinois*, 360 U.S. 264 (1959).

34

The evidence concealed from Porter "may have had an effect on," *Id.* at 271 and was "material" to, *Brady v. Maryland*, 373 U.S. 83, 87 (1964), jurors' guilt and sentencing decisions. When declining to give an instruction on self-defense, the trial court emphasized Reaves acted within protocols as a police officer. J.A.1143 ("We're not talking about some other person on the street who might do this. We're talking about a law enforcement officer here."). Evidence of Reaves's history of aggressive conduct as a police officer was relevant to whether prosecutors had proved beyond a reasonable doubt that Porter shot Reaves for the purpose of interfering with the performance of his official duties; would have supported Porter's requests for instructions on self-defense and lesser degrees of murder; and would have supported arguments against death eligibility and in favor of a life sentence.

The state court dismissed this claim as a matter of law, finding the evidence was not concealed. J.A.2437-38. Based on disclaimers of prosecutors accused of concealing the information limited to their personal knowledge or office files, and a misreading of a letter from the City of Norfolk, the state court held the prosecution did not have any information about the incidents, and "there is no obligation to produce information available to the defendant from other sources, including diligent investigation by the defense." *Id*.

But sources declined to provide the information voluntarily to Porter, and

the state court refused to provide Porter any opportunity through discovery to review Reaves's personnel file from the NPD or the results of the background check done as part of the city employment process.[15] It is undisputed that the contents of Reaves's personnel file, including his background investigation, are *not* available to Porter without court assistance. The state court's decision to the contrary was based on an unreasonable determination of facts under § 2254(d)(2). It also was an unreasonable application of clearly established federal law under § 2254(d)(1). *Banks v. Dretke*, 540 U.S. 668, 696 (2004); *see also Strickler v. Greene*, 527 U.S. 263, 285 (1999).

The district court found, "to the extent Porter argues that the prosecution should have been able to obtain Officer Reaves's alleged disciplinary record from the Baltimore Police Department," *Kyles* could not be read to impose such a duty on the Norfolk prosecutors. J.A.2823-24. Porter never argued that prosecutors had a duty to obtain and disclose files from Baltimore; he consistently maintained that it was information *already* in the files of the NPD that prosecutors had a duty to discover and disclose. J.A.1664; J.A.2537-39; J.A.2742-43; J.A.1762; *see also Kyles*, 514 U.S. at 437; *Strickler*, 527 U.S. at 280-81; *Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006). Porter maintained that the NPD's background check

---

[15] Unlike *Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002), cited as support by both the state and federal courts, in which the evidence in question originated with the defendant himself, Porter seeks evidence that has always been in the exclusive control of the NPD.

conducted as part of Reaves's hiring process would include detailed information about Reaves's history as a Baltimore police officer.

The district court held the state court's decision was not unreasonable because "Porter has not provided sufficient evidence to show that prosecutors must have necessarily known" about the incidents. J.A.2823. The Supreme Court is clear, however, *Brady* does not require prosecutors to have actual knowledge. *Kyles*, 514 U.S. at 437; *Strickler*, 527 U.S. at 281-82; *United States v. Agurs*, 427 U.S. 97, 110 & n.17 (1976). The relevant inquiry is whether favorable information not disclosed to the defense was known to anyone "acting on the government's behalf in the case." *Kyles*, 514 U.S. at 437; *Phillips*, 455 U.S. at 219.

## C. Trial Counsel Unreasonably Failed to Call Powerful Exculpatory Testimony to Jurors' Attention

"A key issue argued at the guilt phase was at what point [Porter] knew that there was a police officer outside the complex whom he might encounter, and thus, when he could have formed the intent to interfere with a police officer engaged in his official duties." J.A.2805, J.A.2883. The prosecution's case relied heavily on Latoria Arrington's testimony that Porter left the second-floor apartment only after she told him she saw Reggie Copeland outside talking with a police officer. The prosecution told jurors "the act of killing Stanley Reaves does not start on the sidewalk. I ask you to consider [Porter's] awareness of [Reaves] being [out on the sidewalk] . . . . Porter[] made choices, and those choices resulted in Stanley Reaves

37

bleeding to death in the gutter. And those choices started as [Porter] came down those stairs [from Valorie's second-floor apartment]." J.A.1168-71.

But Latoria's account was flatly contradicted by prosecution witness Copeland. Copeland testified he followed Reaves's police cruiser back to the apartment on foot and did not arrive until after Porter was already exiting the apartment building. J.A.538-42. In other words, Porter left the second-floor apartment walked down the stairs and out the front door of the building *before* Copeland and Reaves got to the street outside the building.

In state post-conviction, Porter alleged counsel was deficient for failing to attack Latoria's account and the prosecution's corresponding argument with Copeland's testimony. The Warden proffered affidavits from both counsel containing identical paragraphs alleging counsel did not want Copeland believed over other witnesses. J.A.2556; J.A.2260. The state court dismissed this claim, finding counsel chose to make a universal attack on Copeland's credibility and that decision was reasonable. J.A.2439.

The district court did not adopt the state court's decision or the affidavits from counsel. It found instead that the record showed counsel wanted jurors to believe at least part of Copeland's testimony and urged them to do so. J.A.2831; *see also* J.A.2750-51 & n.23; 1229 ("I ask that you not simply dismiss Reggie Copeland's words today. . . . Reggie saw that officer draw his gun."). Like other

testimony from Copeland that trial counsel relied on, J.A.1194-95, Copeland's account of his arrival was consistent with all other witnesses on the street and was not detrimental to Porter.

The district court found, nonetheless, counsel's choice not to use Copeland or other witnesses to impeach Latoria was "logical based on all the circumstances and evidence," and not deficient under *Strickland*. J.A.2831. It found no prejudice could be established because prosecution witness Simone Coleman testified "that Porter saw Office Reaves in uniform and approached him, thus, choosing to confront him." *Id.* In fact, Coleman testified *Reaves saw Porter* coming across the grass toward the sidewalk but did not testify *Porter saw Reaves*. J.A.672. She said it appeared to her Porter was "going to go past [Reaves]," when Reaves grabbed Porter's left arm. J.A.675-76; J.A.1142. The record established the opposite of what the district court found. Moreover, even if there was evidence Porter saw Reaves, it is not relevant to Porter's claim. *Strickland*, 466 U.S. at 694 (existence of some remaining inculpatory evidence does not defeat an allegation of prejudice).

The district court did not address Porter's evidence, J.A.2549-54, J.A.2749-51, including the fact that, instead of referring jurors to Copeland's testimony, trial counsel attacked Latoria by referring to a photograph showing the apartment window blinds. This invited witnesses to confirm the window blinds were *open* on

the day of the shooting. J.A.811, J.A.797 (Phillips testifying she later closed the blinds); *see also* J.A.787-90. Despite this testimony, counsel argued without support the women in the apartment "couldn't have [seen out the window] because" the blinds in the picture were closed, "and nobody claimed they did any adjustment on those blinds." J.A.1196. Contrary to the district court's finding, counsel's argument in direct conflict with the evidence was neither "logical" nor reasonable.

### D.    Counsel Failed to Reasonably Investigate Aggravating Evidence

Where, as here, the prosecution notifies counsel of the aggravating evidence it will use to establish future dangerousness, J.A.39-48, J.A.218, J.A.2124-25, counsel has a heightened duty to investigate that evidence. *See Rompilla v. Beard*, 545 U.S. 374, 387 (2005). Porter's counsel failed to meet their duty—a failure counsel effectively conceded pretrial. *See, e.g.*, J.A.189-90, J.A.2574-82. For example, counsel never spoke with Porter about the prosecution's evidence until witnesses took the stand, J.A.1744-58; failed to familiarize themselves with documents that would have enabled them to impeach prosecution witnesses and identify rebuttal and mitigating information, *see, e.g.*, J.A.1586; and never contacted witnesses identified in Porter's files who could have provided testimony showing Porter did not pose a future danger to society, *see, e.g.*, J.A.1772-75.

The state court dismissed Porter's claim based on two unreasonable findings.

40

First, the court found counsel had their investigators review the aggravating evidence and "obtain as much information as possible about each incident." J.A.2441. The only arguable support for that finding is a conclusory assertion in counsel Migliozzi's affidavit that counsel "assigned [their] investigators . . . to thoroughly review and report on any additional information regarding each incident." J.A.2257. Migliozzi did not claim he asked investigators to obtain "as much information as possible about each incident," and he did not claim investigators carried out his purported instruction or reported back with information. Counsel Atkins's affidavit did not claim investigators were assigned to review aggravating evidence or that they provided her with any related findings.

Defense investigators Van Horn and Schweizer denied ever being asked to look into the aggravating evidence. *See, e.g.*, J.A.2418 (Schweizer: "I did not interview any witness or victim relating to the 76 unadjudicated bad acts"); J.A.2425-26 (Van Horn: "I did not investigate the circumstances of any of those noticed acts because Mr. Porter's trial attorneys did not ask me to do so."). Schweizer was the mitigation investigator but did not know until years after the trial that the prosecution had provided notice of the aggravating evidence. J.A.2418-19.

Second, the state court found, based solely on Migliozzi's affidavit, counsel visited Wallens Ridge State Prison (WRSP) and Red Onion State Prison (ROSP) to

41

"obtain information about the incidents that took place while [Porter] was an inmate at these facilities." J.A.2441. The only investigation Migliozzi claimed to have undertaken, however, was meeting with one unidentified inmate and with unidentified correctional officers (COs). J.A.2257. His affidavit does not identify any alleged interviewees nor does it indicate which incidents of the 15 at WRSP or ROSP, J.A.45-46, were discussed, what information was learned, or what decisions, if any, were made as a result. Atkins did not claim any investigation was conducted into aggravating evidence at WRSP or ROSP. J.A.2260-63. The two investigators recalled visiting just one prison, denied interviewing anyone who knew Porter, and described the purpose of the visit as education about prison conditions. J.A.2418, J.A.2426. The Warden produced no documentary evidence supporting the investigation the state court imagined took place at WRSP and ROSP.

The district court found Porter failed to adequately support his claim that these state court findings were unreasonable, but did so based on the erroneous assertion that Porter failed to sufficiently contradict "*affidavits* [plural] of Porter's trial counsel stating that *they* performed an adequate investigation" or "*counsels'* assertion that *they* personally conducted such interviews" at WRSP or ROSP. J.A.2848-49 (emphasis added). The state court's findings were extrapolated from

42

Migliozzi's proffered affidavit alone. [16] Migliozzi's proffered affidavit was contradicted by his own investigators and by affidavits and documents cited in Porter's petition. *See, e.g.*, J.A.2418; J.A.2425-26; J.A.2574-82. Proffers submitted by movant disputing petitioner's allegations cannot justify dismissal as a matter of law. *See, e.g.*, *Halifax Corp. v. First Union Nat'l Bank*, 546 S.E.2d 696, 699 (Va. 2001); *Sloane v. Gen. Motors Corp.*, 457 S.E.2d 51, 51-52 (Va. 1995); *see also Conaway*, 453 F.3d at 582; *Gordon v Braxton*, 780 F.3d 196, 203-04 (4th Cir. 2015) (finding state court's dismissal of claim after failing "to develop the record and resolve" factual disputes was not a merits adjudication); *Townes v. Jarvis*, 577 F.3d 543, 550 (4th Cir. 2009).

The district court acknowledged Van Horn's and Schweizer's affidavits "differ[ed]" from trial counsel, but found the conflicting accounts insufficient to satisfy (d)(2) because they and other evidence do "not rise to the level of showing by clear and convincing evidence" the state court finding was unreasonable. J.A.2849. This is another example of the district court's improper conflation of standards set out in §§ 2254(d)(2) (requiring petitioner to show a state court decision was based on an unreasonable determination of facts presented in the state court record) and (e)(1) (allowing petitioner to show by clear and convincing

---

[16] Each counsel claimed to review investigation reports, J.A.2257; J.A.2261, but no report was identified, sought, or produced relating to investigation of aggravating evidence.

evidence findings of fact made by the state court are not correct). The showing under (d)(2) must be made based on the state court record, while (e)(1) does not limit petitioner to what was in the state court record and ensures petitioner will have a full and fair opportunity to develop and present evidence to the federal court.

The state court also dismissed this claim because counsel cross-examined witnesses. J.A.2441. Cross-examination is irrelevant to Porter's claim that counsel's deficient performance prevented them from *effectively* impeaching witnesses, rebutting the prosecution's evidence, and presenting mitigating information. *Kimmelman v. Morrison*, 477 U.S. 365, 385-86 (1986) ("vigorous cross-examination" could not "lift counsel's performance back into the realm of professional responsibility"). Moreover, the district court's determination that "after an investigation, Porter's counsel *chose* to rely on cross-examination of the prosecution's witnesses as opposed to another tactic," J.A.4021 (emphasis added), is unsupported by the record and is based on an unreasonable application of *Strickland* and its requirement that counsel base choices on a reasonably complete investigation. 466 U.S. at 690-91. Counsel never claimed to have made this choice. In fact, counsel made clear to the trial court, because they were denied a risk assessment expert and did not independently identify and investigate the kind of information Porter submitted with this claim, "[t]here is no other evidence, outside

of cross-examination, that the defense would be able to introduce to the Court." J.A.190. Counsel's reliance on cross-examination "resulted from inattention, not reasoned strategic judgment." *Wiggins*, 539 U.S. at 526; *id.* at 526-27 (rejecting state court's "*post hoc* rationalization of counsel's conduct").

Because of counsel's inadequate investigation, jurors never learned Porter: (1) ran into his own home while fleeing from the police, not "some stranger's house," as prosecutors claimed; (2) was routinely harassed and provoked by CO Adkins and other WRSP guards, including while he was praying on the day he grabbed Adkins; (3) was punished by being strapped to a bed in his underwear for 48 hours, lying in his own urine, contrary to Adkins's false testimony; (4) was unnecessarily and excessively restrained by guards at the Norfolk jail for failing to submit to a non-routine strip search before court; (5) was known by other inmates as a "peaceful person" who was "good hearted and generous" and set a positive example for others in avoiding conflict; (6) struck Inmate Lloyd in self-defense against an unprovoked two-on-one attack; and (7) responded to Inmate Downey's sexually-charged statement made in front of other inmates because failure to respond could have caused Porter to become a target of violence. J.A.2575-79. Courts "may reasonably assume that the jury could give more relative weight to a prior violent felony aggravator where defense counsel missed an opportunity to argue that circumstances of the prior [incident] were less damning than the

45

prosecution's characterization . . . would suggest." *Rompilla*, 545 U.S. at 386 n.5. Counsel's failure to provide jurors this evidence undermines confidence in jurors' sentencing decisions that should have considered the evidence. *Wiggins*, 539 U.S. at 537-38.

## E.    Counsel Failed to Ensure Jurors Were Able to Give Effect to Favorable Evidence

The defense detailed Porter's mental state for each of the three shots he fired. Trial counsel argued Porter initially decided to shoot Reaves because "Porter developed the fear that was reasonable to him under those circumstances to say, Hey, I'm going to be shot. And I'm not going to be shot; I'm going to defend myself and pull my gun . . . . those facts support a theory of self-defense." J.A.1137; *see also* J.A.1145. Porter testified he blanked out before shooting Reaves a second and third time. J.A.1035-36. The prosecutor added, "[Porter] acknowledged that he aimed at Officer Reaves and he meant to hit Reaves with a bullet. And that was on the first shot." J.A.1147.

In Virginia, a defendant making a claim of self-defense "implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors." *McGhee v. Commonwealth*, 248 S.E.2d 808, 810 (Va. 1978). Thus, with regard to the first shot, as distinct from the latter two, counsel admitted intent to kill and assumed the burden of proving the affirmative defense.

46

It would not have been inconsistent to argue Reaves's actions indicating his intention to kill or seriously harm Porter also indicated his intention to go outside his duties as a law enforcement officer. J.A.1117. In fact, Porter's counsel argued that "Reaves went beyond what his duties were when he essentially violated his protocol by jumping out in front of Mr. Porter and grabbing him and getting at such close distance to him and then pulling out his weapon." *Id.* Had counsel sought a first-degree murder instruction because Reaves "went beyond . . . his duties," they could have highlighted for jurors that it was the prosecution's burden to establish beyond reasonable doubt that Reaves's actions were within the boundaries of official law enforcement protocols, and provided jurors the means for finding the prosecution's evidence insufficient on this element.

One of Porter's lawyers explained he did not seek a first-degree instruction because he believed the fact Reaves was on patrol in uniform prohibited Porter from arguing he did not shoot Reaves in order to interfere with the performance of his official law enforcement duties. J.A.2256.[17] No such prohibition exists; it was unreasonable for counsel to presume one without research or investigation. The state and district courts unreasonably relied on an "after-the-fact rationalization of a litigation strategy." *Tice v. Johnson*, 647 F.3d 87, 105 (4th Cir. 2011); *see also*

---

[17] The Warden's proffered statement from Migliozzi improperly attempted to assert hearsay about the other lawyer's thoughts and actions about this instruction. J.A.2256. But Atkins's statement was silent on this point. J.A.2260-61.

*Jones v. Clarke*, 783 F.3d 987, 998 (4th Cir. 2015) ("A 'post hoc rationalization of counsel's conduct' . . . is no substitute for 'an accurate description' of what really occurred") (quoting *Wiggins*, 539 U.S. at 526-27).

The district court found "Porter's argument that the state habeas court unreasonably held that *nothing* supports a finding that Porter reasonably believed Officer Reaves was not engaged in the execution of official duties at the time of the shooting is technically correct[.]" J.A.2833. Having just found the state court's determination of facts unreasonable, the district court nonetheless incorrectly treated the state court's holding based on this unreasonable determination of facts as itself a fact entitled to a presumption of correctness under § 2254(e)(1) which Porter had not rebutted with clear and convincing evidence. J.A.2833.[18]

Counsel's deficient representation deprived jurors of the most reasonable avenue through which to give effect to Porter's testimony. Jurors were powerless to require prosecutors to prove Porter's "intention to interfere" beyond a reasonable doubt. Because jurors were without the ability to give effect to a critical

---

[18] The state court's holding that *nothing* in the record supported a finding that there was more than a scintilla of evidence that Porter reasonably believed Reaves was not engaged in the execution of official duties at the time of the shooting was rebutted by clear and convincing evidence, including Porter's testimony and confirming witnesses, *see, e.g.*, J.A.675 (Reaves intercepted Porter and grabbed his arm); J.A.623-26 (Porter raised his hands in submission); J.A.648 (witnesses did not hear Reaves speak to Porter); J.A.662 (Reaves's exasperated comment "that he was tired of coming out in this area" even though he had been on his Norfolk beat for only a few months).

part of Porter's testimony and corroborating accounts from other witnesses, confidence is undermined in jurors' decisions about guilt and sentencing.

## IV.    Claims under *Martinez*[19]

### A.    Counsel Unreasonably Failed to Object to Improper Curative Instructions and Comments during Closing

In closing at sentencing, counsel argued Porter would not be a future danger to society if spared the death penalty. J.A.1502-62. Commonsensically, he asked jurors to make prison their "focus" when thinking about the part of society Porter would most likely affect. J.A.1516. He did not argue jurors were *required* to look only at prison or that society meant anything other than all of society. Nonetheless, the prosecutor objected, twice, that counsel misstated the law. Like the Warden, the prosecutor maintained that state law did not allow Porter to inform jurors about prison life by evidence or argument when addressing future dangerousness. This ignores Porter's constitutional right to present jurors with all relevant evidence and argument on the subject.

Instead of overruling the objection, the trial court instructed jurors that "society" for purposes of assessing future dangerousness meant "all of society," and that jurors were not "required" to focus on prison. J.A.1517-18. Coming after a correct statement of law by Porter's counsel, the judge's instruction in context was

---

[19] Porter is represented in Part VI only by Mr. Kelleter as independent *Martinez* counsel. Remaining counsel represented Porter in state habeas.

misleading and implied Porter's counsel had incorrectly stated the law and his comments about "focusing" on prison should be disregarded.

This implication was evident to jurors because the instruction came only moments after the judge's first curative instruction on the subject, in response to the prosecutor's objection: "Society is everything; everybody, anywhere, anyplace, anytime." The judge did not even give counsel a chance to respond to the objection. J.A.1514-15. Cumulatively, the trial court's remarks improperly implied Porter had misstated the law and conveyed to jurors they must disregard Porter's evidence and argument focused on future prison life when addressing future dangerousness.

Porter argued on appeal he was denied a fair sentencing because of these and other improper judicial comments. The court found the claim was defaulted because counsel failed to object contemporaneously to the trial court's comments.

In the district court, Porter asserted cause under *Martinez v. Ryan*, 566 U.S. 1 (2012), to bring the claim and sought full *de novo* review.[20] J.A.2602-08. However, the district court failed to address Porter's arguments based on federal constitutional law and improperly limited its analysis to state law.[21] Virginia

---

[20] Porter incorporates arguments in IV.B, *infra*, addressing the application of *Martinez* to his claims.

[21] For example, the district court failed to address the application of *Simmons v. South Carolina*, 512 U.S. 154 (1994) and *Herring v. New York*, 422 U.S. 853 (1975), and *Skipper v. South Carolina*, 476 U.S. 1 (1986).

courts, unfortunately, and seemingly alone among the states, require juries to put blinders on about future prison life when deciding if a capital defendant will be a danger to others if spared the death penalty. It is a perverse logic that unjustly restricts admissible evidence and argument in the most profound area of law— whether a person lives or dies. It is the same unjust logic that led to the denial of a risk assessment expert to address his future dangerousness.

Porter was denied a fair sentencing because of the trial court's curative instructions, trial counsel IAC, and subsequent state habeas counsel IAC. It is imperative the federal courts address this mistake of law head on. Porter requests the Court vacate and grant a new sentencing as a matter of law, or in the alternative, remand to the district court to apply correct constitutional standards.

**B.** **The District Court Improperly Denied Discovery on Porter's *De Novo* Claim that His Trial Counsel Failed to Investigate Reaves's Shooting**

The Warden conceded trial counsel had only one other case to handle for the fifteen months he represented Porter pre-trial, J.A.2256; still, counsel failed to interview virtually every single prosecution witness to the shooting before trial. J.A.2320-32. Prosecutors even placed counsel on notice that two of its witnesses had lied to police; trial counsel still did not interview them. J.A.2802-03.[22] At trial,

---

[22] The Commonwealth sent a pretrial supplemental response to discovery to counsel that expressly told them that Valorie Arrington and another woman had told investigators that "they had not seen anything."

counsel's failure to investigate the shooting meant jurors never heard about a *quid pro quo* between the prosecution and key witness Valorie Arrington, inducing her to testify for the government, or multiple exculpatory statements by prosecution witnesses that were uncovered for the first time by *Martinez* counsel in the district court.

Valorie disclosed during the habeas process that she agreed to testify for the prosecution only after they agreed to a *quid pro quo*. J.A.2617-18. Just days before trial, Valorie told prosecutors she did not have helpful information about the case. Prosecutors offered an "I'll-help-you-if-you-help-me" proposition, in her words, if she would testify against Porter. *Id.* Valorie was one of five women—family or close friends—prosecutors wanted to provide crucial testimony about Porter's mental state before he shot Reaves.[23] Valorie's daughter, Latoria, still lived with her. Monica Arrington was Valorie's sister, and Monica Dickens and April Phillips were sisters who were close family friends. Prosecutors knew the women were tight-knit and could testify in unison. Trial counsel did not know this because he never spoke with them before trial. Trial counsel never learned that the women, acting together, repeatedly told police in multiple settings that they did not know about the shooting. *Martinez* counsel learned this simply by speaking to Monica

---

[23] Porter's multiple motions for discovery in the district court summarize the trial testimony and exculpatory evidence relevant to this claim. J.A.2793-2801; J.A.2778-82; J.A.2804-06.

Dickens. Without the benefit of this impeachment evidence, trial counsel sat helplessly as the women told jurors what the government wanted them to hear about Porter's purported actions before he shot Reaves, unaware of the troubling process that gave rise to their testimony. In short, counsel's deficient performance prejudiced Porter. J.A.2607-09; J.A.2775-76.

The state court did not hear this claim. In the district court, Porter asserted *Martinez* cause for default and moved multiple times for discovery appropriate to developing a record on a *de novo* merits review. For good measure, Porter also asked for discovery to help establish cause for default under *Martinez*, which, because Virginia requires IAC claims to be raised in state habeas, only requires a showing that: (1) state habeas counsel committed IAC and (2) that the underlying trial IAC claim is "substantial." 132 S. Ct. at 1318-1319. Substantial means "the claim has some merit," *id*., such that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336. Of note, this is the same standard that is required for a COA, *Martinez*, 566 U.S. at 14, which the district court granted on this claim and thus, by inference, also found Porter had established cause for default for this claim.

Porter established a substantial trial IAC claim but exhausted his avenues to develop a record absent compulsory process. Just by interviewing Valorie and Dickens, *Martinez* counsel uncovered a *quid pro quo* and multiple exculpatory

statements by prosecution witnesses establishing that Porter "deserve[d] encouragement to proceed further."

The district court abused its discretion when it denied Porter's multiple motions for discovery as "moot," moved directly to a merits review, and improperly granted a motion to dismiss on an empty record. J.A.2876-79. A court abuses its discretion when it fails to adequately consider judicially recognized factors constraining its exercise of discretion, or bases its decision on an error of fact or law. *L.J. v. Wilbon*, 633 F.3d 297, 304 (4th Cir. 2011). Here, a denial of discovery to develop a record on new claims made this Court's requirement in *Juniper v. Davis,* 737 F.3d 288 (4th Cir. 2013), to appoint independent *Martinez* counsel a hollow mandate. It also undermined the principle behind *Winston v. Pearson*, 683 F.3d 489 (4th Cir. 2012), that the court of initial review on a habeas claim should afford a petitioner a reasonable opportunity to develop the record.[24] Absent proper discovery, the district court dismissed the claim on a bare record that made for a foregone conclusion. Porter requests the Court vacate and remand with instructions to grant discovery and review this claim consistent with *Martinez*.

---

[24] *Winston* held the state court abused its discretion by denying a reasonable opportunity to develop a record. A "substantial" *Martinez* claim in federal court, like Porter's, is in an analogous position; it is the first opportunity for merits review of the claim.

### C.     The Prosecution Violated *Brady* Regarding Valorie Arrington and Other Witnesses

The prosecution violated its *Brady* obligations when it failed to disclose its *quid pro quo* with Valorie, and the multiple exculpatory statements revealed by Dickens. *Supra* IV.B. Porter's *Martinez* counsel uncovered these violations only in the district court. Porter asserted cause for default based on the prosecution's suppression of the evidence in state proceedings. *Banks v. Dretke*, 540 U.S. 668 (2004). In dismissing the claim, the district court abused its discretion in cutting short Porter's efforts under *Martinez*. *Supra* IV.B. Porter requests the Court  vacate and remand with instructions consistent with its remand under subsection IVB.

## CONCLUSION

For these reasons, Thomas Porter respectfully requests the judgment of the district court be reversed and the matter be remanded to the district court.

Respectfully submitted,

/s/ *Robert Lee*

Robert Lee
Dawn M. Davison
Virginia Capital Representation Resource Center
2421 Ivy Road, Suite 301
Charlottesville, Virginia 22903
ddavison@vcrrc.org
roblee@vcrrc.org
(434) 817-2970
(434) 817-2972 (facsimile)

Trey R. Kelleter
Vandeventer Black, LLP
101 West Main Street, Suite 500
Norfolk, Virginia 23510
TKelleter@vanblacklaw.com
(757) 446-8697
(757) 446-8670 (facsimile)

*Attorneys for Petitioner-Appellant*
*Thomas Porter*

## REQUEST FOR ORAL ARGUMENT

Because of the significant issues presented, Thomas Porter respectfully requests he be granted oral argument.

/s/ *Dawn M. Davison*
Dawn M. Davison


## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,968 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in fourteen point Times New Roman.


/s/ *Dawn M. Davison*
Dawn M. Davison
Virginia Capital Representation Resource Center 2421
Ivy Road, Suite 301
Charlottesville, Virginia 22903
(434) 817-2970
(434) 817-2972 (facsimile)

## CERTIFICATE OF SERVICE

I certify that on April 7, 2017, the foregoing Appellant's Opening Brief was filed electronically through the Court's CM/ECF system, which provides a copy of the materials to Matthew Dullaghan, Assistant Attorney General, at mdullaghan@oag.state.va.us.

/s/ *Dawn M. Davison*
Dawn M. Davison
Virginia Capital Representation Resource Center 2421
Ivy Road, Suite 301
Charlottesville, Virginia 22903
(434) 817-2970
(434) 817-2972 (facsimile)